**Simon JUNGER, Plaintiff-Appellant,**

v.

**HERTZ, NEUMARK & WARNER,
Defendant-Appellee.**

**No. 128, Docket 33701.**

United States Court of Appeals,
Second Circuit.

Argued May 4, 1970.

Decided May 6, 1970.

Simon Junger, pro se.

Mortimer Goodman, New York City (Grandefeld & Goodman, New York City, on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, WATERMAN, Circuit Judge, and JAMESON,* District Judge.

PER CURIAM.

Junger brought this action under the securities laws, seeking to recover $5,000 he lost because Hertz, Neumark & Warner, a member firm of the New York Stock Exchange, allegedly violated section 7(c) of the Securities Act of 1934, 15 U.S.C. § 78g(c) (1964) by its participation in certain transactions which occurred in 1965 and 1966. Section 7(c) provides that

It shall be unlawful for any * * * broker * * * directly or indirectly, to extend or maintain credit or arrange for the extension or maintenance of credit to or for any customer—

(1) On any security * * * in contravention of the rules and regulations which the Board of Governors of the Federal Reserve System shall prescribe * * *.

Regulation T, promulgated by the Federal Reserve pursuant to this section, has long provided that a broker cannot ar-

range for a third party to extend credit in a greater amount than the broker could extend to the customer directly. Junger attempted to prove below that one Gelber, a registered representative of defendant, arranged a loan between Junger and one Stark, a money-lender and factor who supplied funds to Junger to purchase securities which themselves became the security for the loans. It is undisputed that the credit extended by Stark was far in excess of that which Hertz, Neumark could have itself extended consonant with the prevailing margin requirements. Judge Bonsal gave judgment for defendant on Junger's failure of proof, and we affirm.

It has long been settled that a person for whom a broker has unlawfully arranged credit has a private right of action against the broker for violation of section 7(c). See Smith v. Bear, 237 F.2d 79 (2d Cir. 1956); Remar v. Clayton Securities Corp., 81 F.Supp. 1014 (D. Mass.1949); Note, Federal Margin Requirements as a Basis for Civil Liability, 66 Colum.L.Rev. 1462, 1467–71 (1966). But an essential element in such a suit is establishing that the broker had sufficient connection with the extension of credit by a third party.[1]

The heart of Junger's case is his claim that Gelber "arranged" the factoring agreement. Junger testified that Gelber introduced him to Stark, a fellow customer of Gelber's, that Gelber handled the mechanics of the factor arrangement, accepted Junger's payments on the account on behalf of Stark, and took purchase orders from Junger for Stark's account. This would seem a paradigm example of arranging. As the SEC stated in Sutro Bros. & Co., 41 SEC 443, 456–57 (1963):

[It is] clear that when a broker permits himself to become the intermediary between customer and factor with

---

* Sitting by designation.

[1]. Since we accept Judge Bonsal's finding that Junger did not prove this element of his claim we do not consider the other elements in a private cause of action

under 7(c). Such an implied action sounds in tort, and there are difficult questions of proximate cause and quantum of relief which must be faced. See generally 5 L. Loss, Securities Regulation 3307–10 (1969).

respect to the customer's account or dealings with the factor, as by conveying the customer's communications or instructions to the factor or by responding to requests or directives of the factor concerning the customer's transactions, the broker becomes so involved in extension or maintenance of credit for the customer by the lender as to be held to be arranging.

Junger of course would have had to establish that Hertz, Neumark was responsible for Gelber's unlawful actions, but liability might be rested on either section 20 of the 1934 Act, 15 U.S.C. § 78t (1964), or common law doctrines of the liability of a principal for certain acts of his agent, Restatement (Second) of Agency §§ 219–67 (1958). See generally Moscarelli v. Stamm, 288 F.Supp. 453, 460–461 (E.D.N.Y.1968); Note, Brokerage Firms' Liability for Salesmen's Fraudulent Practices, 36 Fordham L. Rev. 95 (1967).

■ The court below, however, did not accept Junger's version of the events in question. Contrary to Junger's testimony, Stark testified that he had been introduced to Junger by people unconnected to Hertz, Neumark in defendant's board room, that he had personally explained the entire arrangement to Junger, and that Junger made payments on the account to him directly except that once or twice Gelber, knowing that Stark was due in the office momentarily, agreed to hold the money briefly; Gelber corroborated this testimony. Accepting the Stark-Gelber version, Judge Bonsal found that Hertz, Neumark's only connection with the factoring arrangement was the execution of purchase and sell orders on Junger's shares held in Stark's name in Stark's account.

■ It is clear that when the customer establishes credit entirely on his own and the only connection of the broker is to execute transactions involving stocks purchased on credit, the broker does not violate section 7(c) and Regulation T. See Sutro Bros. & Co., 41 SEC at 451–52; Meisel v. New Jersey Trust Co., 218 F.

Supp. 274, 277 (S.D.N.Y.1963). For, as Professor Loss points out, "any other view would make the broker an insurer that customers were employing credit, wherever secured, only to the extent that could be provided by the broker." 5 L. Loss, Securities Regulation 3295 (1969).

Affirmed. Each party shall bear his own costs.