**Julius SPOON and Annette Spoon, Plaintiffs,**

v.

**WALSTON & CO., Inc., a Delaware corporation, Defendants.**

**Civ. A. No. 36884.**

United States District Court, E. D. Michigan, S. D.

June 16, 1972.

Elwood S. Simon, Schlussel, Lifton, Simon & Rands, Detroit, Mich., for plaintiffs.

George H. Zinn, Jr., Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., for defendants.

## MEMORANDUM OPINION

FEIKENS, District Judge.

Plaintiffs in this case are Julius and Annette Spoon. Defendant is Walston & Company, Inc., a brokerage firm. This action was instituted claiming violations of a number of sections of the Securities Act of 1933 and the Securities Exchange Act of 1934. During final arguments plaintiffs' counsel made a motion, pursuant to Rule 15(b) for the pleadings to be amended to conform to the proofs.[1] This court took the motion under advisement at that time. The motion is hereby granted, the court finding that the ends of justice so require. Plaintiffs now seek damages they allege occurred as a result of violation by defendant of Regulation T[2] promulgated by the Board of Governors of the Federal Reserve System pursuant to Section 7 of the Securities Exchange Act of 1934.[3]

This court has exclusive jurisdiction over this action.[4] Beury v. Beury, 127 F.Supp. 786 at 789–790 (S.D.W.Va. 1954). See also Mitchell v. Bache & Co., 52 Misc.2d 985, 277 N.Y.S.2d 580 (1966).

The facts are these: Plaintiff Julius Spoon, and the registered representative of the defendant, Ernest Weiss, had been dealing with one another for approximately six months prior to the transaction here complained of. The Spoons, in fact, transferred their account to Walston & Company for the purpose of dealing with Weiss. Considerable comraderie developed between Weiss and Spoon. The men had frequent conversations both in person and by telephone, and they frequently breakfasted together. Mrs. Spoon was also acquainted with Weiss. Weiss referred to Spoon as "Cookie."

On May 6, 1971, defendant purchased 800 shares of Control Data Corporation common stock for and in the account of

---

1. Federal Rules of Civil Procedure, Rule 15(b).

2. 12 C.F.R. § 220; 34 Federal Register 9196; 34 Federal Register 9984.

3. 15 U.S.C.A. § 78a et seq.

4. 15 U.S.C. § 78aa.

plaintiffs. This court, after weighing conflicting testimony, finds that Spoon authorized defendant through Weiss to purchase this stock with the intention of day trading it. A day trade is a transaction in which a stock is purchased and sold the same day with the hope by the trader that the selling price will be higher than the purchase price and thus result in a gain to the trader.

Shortly after the purchase, however, the price of the stock dropped and, with slight variation, continued to drop for the rest of the day. Fearing a substantial loss, Spoon, advised by Weiss, did not sell the stock before the close of the day's trading.

The purchase, originally intended to be day traded, was made on Spoon's margin account. The margin account did not, however, have sufficient funds to sustain this purchase as a regular margin purchase.

In order to sustain the purchase as a regular margin purchase, it was necessary for plaintiffs to deposit into their account on or before the settlement date of May 13, 1971, sufficient cash or securities to bring their account up to the margin requirement. This is required by Regulation T. A deposit of approximately $40,850.00 was necessary to bring the account within the provisions of this requirement.

According to Regulation T, 12 C.F.R. § 220.3(3), the creditor, Walston & Company, Inc., is required to sell other non-exempt securities in the Spoon account prior to the expiration of the five-day limit prescribed in Section 220.3(b), if the Spoons failed to deposit funds as required.

No money was deposited in the Spoon account. At no time did Julius Spoon intend to deposit money to cover the debit balance in the account; nor did Weiss believe that Spoon intended to deposit funds to cover. Mrs. Spoon testified that she was unaware of the transaction.

Weiss had decided to help his friend "Cookie" and applied for an extension of the settlement date. Regulation T, in providing for the five-day settlement period, also provides that the settlement date may be extended in "exceptional circumstances" by a special committee of the New York Stock Exchange. 12 C.F.R. § 220.3(f). The reason used was that Walston & Company was unable to contact its customer, but the fact is that Weiss and Spoon were in daily contact. An extension of the settlement date was granted from May 13 to May 17. Spoon and Weiss hoped that the stock would rise in price and that a sale could be made that would allow the loss incurred by the fall of the stock to be lessened or erased.

No funds were deposited in Spoon's margin account between May 13 and May 17. On May 17, defendant, via its registered representative Weiss, again applied for an extension saying that the Spoons were out of town and would bring the money in. This Weiss also knew to be untrue. The settlement date, based on this representation, was extended from May 17 to May 21.

The question presented is whether Walston & Company itself, and through its registered representative Ernest Weiss, violated Section 7 of the Securities Exchange Act and Regulation T promulgated thereunder by failing to liquidate the Spoon account and by giving untrue reasons for obtaining extensions of the settlement date.

■■ Defendant contends that Weiss was just helping his friend "Cookie" who was reluctant to take a loss for fear that his wife would find out. But sympathetic though that may be, a broker-dealer, via its registered representative, cannot, even with the consent of the customer, fail to liquidate securities to meet a margin call. Complicity in avoidance of the Regulations promulgated by the Federal Reserve System does not bar an investor from recovering, nor does it protect a broker-dealer from a suit by the investor for damages. See Serzysko v. Chase Manhattan Bank, 290 F.Supp. 74 (S.D.N.Y.1968), aff'd, 409 F.2d 1360, cert. den. 396 U.S. 904, 90 S.Ct. 218, 24 L.Ed.2d 180; Goldman v. Bank of Com-

monwealth, 332 F.Supp. 699 (E.D.Mich. 1971).

Defendant's contentions that it should not be held liable for the actions of Weiss in "inventing" the reasons for extension are without merit. Without the other personnel and the facilities of Walston & Company, the misrepresentations of Weiss would not have been acted upon. Additionally, the testimony indicated that the request for an extension, after being made by a registered representative, is reviewed and approved prior to being sent to the New York office of Walston & Company (via Walston's wire) for further action. The New York office of Walston & Company then in its discretion makes application to the appropriate committee of the New York Stock Exchange for approval. It is thus apparent that the actions in obtaining the extensions under false pretenses are those of Walston & Company as well as Weiss.

The Act does not specifically provide for a private cause of action for an alleged violation of Regulations promulgated by the Board of Governors of the Federal Reserve System relating to margin requirements. The courts have uniformly held, however, that such a cause of action is implied. Goldman v. Bank of Commonwealth, *supra;* Pearlstein v. Scudder & German, 429 F.2d 1136 (2nd Cir. 1970), and cases cited therein.

Since participation by the plaintiffs in the avoidance of the Regulation (what might be termed *in pari delicto* or contributory fault) does not bar recovery, the court is not required to inquire if defendant's failure to sell plaintiffs' other securities to meet the requirements of Regulation T is the proximate cause of the loss of the whole amount plaintiffs seek to recover. In *Serzysko, supra,* the court, 290 F.Supp. at 88–89, quotes the language of the Supreme Court in Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968): "We have often indicated the inappropriateness of invoking broad common-law barriers to relief where a private suit serves important public purposes. . . ." At p. 138, 88 S.Ct. 1981.

*Serzysko* arose under Regulation U promulgated under Section 7 (analogous to Regulation T, except regulating banks extending credit rather than broker-dealers). A similar case arising in this district is Goldman v. Bank of Commonwealth, *supra.*

The courts, thus, make a distinction where the enforcement of a regulatory statute is involved. "The Court will not entertain a cacophony of blame on the part of the brokers and customers—each blaming the other for not meeting the requirements—the ultimate responsibility must be placed somewhere and Congress has indicated that it is with the brokers or dealers." Avery v. Merrill Lynch, Pierce, Fenner & Smith, 328 F. Supp. 677, at p. 681 (D.C.D.C.1971). This court does not intend to change this explicitly expressed legislative judgment by imposing common law causation standards upon the regulations.

Defendant, after trial, advanced the contention that a recent amendment of the Securities Exchange Act of 1934 bars plaintiffs' recovery herein.[5] Section 301 of that Act,[6] it is contended, applies to borrowers; the requirements of Federal Reserve regulations theretofore applicable only to lenders. Reference to that act is futile. The act is a complexus. In the words of the bard, "Confusion now hath made his masterpiece."[7] This court, fortunately, is spared the problem of construing this amendment. Section 401(c), Title IV, provides that the Board of Governors of the Federal Reserve System may by regulation adjust the effective date of the act within certain limits.[8]

---

5. Public Law 91–508; 84 Stat. 1114.

6. 15 U.S.C.A. § 78g(f).

7. Shakespeare, Macbeth, Act II, Scene II.

8. § 401(c): The Board of Governors of the Federal Reserve System may by regulation provide that the amendment made by title III shall be effective on any date

The Board of Governors of the Federal Reserve System exercised their discretion.

### "MARGIN REQUIREMENTS ON SECURITIES TRANSACTIONS

#### Effective Date of Requirements as to Borrowers.

Pursuant to the authority contained in section 401(c), title IV, of Public Law 91–508, 84 Stat. 1125, the amendments made by title III of that legislation shall become effective on a date to be specified in regulations to be issued hereafter by the Board of Governors. That date as prescribed in § 401(c), shall not be later than November 1, 1971." By order of the Board of Governors, April 27, 1971, FR Doc. 71–6106, filed 4–30–71; 8:45 a. m.[9]

Subsequently, pursuant to the statutory authority granted, the Federal Reserve Board issued Regulation X.[10] This regulation was issued October 7, 1971, effective November 1, 1971. 2 CCH Federal Securities Law Reporter (Exchange Act) 16,175, ¶ 22,301ff. It is thus not binding on this court.

■ The facts of this case amply demonstrate a violation of Regulation T, as promulgated under Section 7. Had defendant Walston & Company liquidated other stock in the Spoon account within five days as required, it would have been held blameless, but by failing to do so and applying for non-factual extensions, it subjected itself to liability. If a brokerage firm fails to observe specific regulations to help a customer, it should be prepared to bear the consequences. Perhaps defendant should have noted the advice of diarist Samuel Pepys, "I am unwilling to mix my fortune with him that is going down the wind." [11]

Since plaintiffs are entitled to prevail, the remaining question is what relief the court should grant. Plaintiffs contend that the transaction should be "voidable" at their option. This position is supported by case law. *Avery, supra* at 679. Goldman v. Bank of Commonwealth, *supra,* and cases cited therein.

■ Since the contract is "voidable" rather than "void," the remedy is properly rescission. Rescission is a proceeding in equity. Black v. Boyd, 248 F.2d 156 (6th Cir. 1957), and cases cited therein. See also New Hampshire Fire Insurance Co. v. Perkins, 28 F.R.D. 588 (D.Del.1961); Massachusetts Mut. Life Ins. Co. v. Hardwick, 118 F.Supp. 485 (E.D.Tenn.1953).

While this court has stated that intricate common law barriers will not be applied here, since the plaintiffs' remedy is equitable in nature, this court is not required to ignore considerations of fairness. "A court of equity is a court of conscience. The function of the chancellor is, upon equitable considerations, to winnow the wheat from the straw. . ." Durkin v. Lovknit Mfg. Co., 208 F.2d 665, at p. 667 (5th Cir. 1953).

The court emphasizes that this award is made upon an equitable basis, the court being convinced that this is a just and fair result. The disposition is based, in part, on observation of the witnesses—most of them parties—and the conclusion that neither party's statement of facts is true. Likewise, neither party is wholly culpable, and neither party is without fault in an equitable sense. This is of importance. "The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it."

---

not earlier than the publication of the regulation in the Federal Register and not later than the first day of the thirteenth calendar month which begins after the date of enactment.

9. 36 Fed.Register 8274, Sat. May 1, 1971.

10. 12 Code of Federal Regulations, Part 224.1 ff.

11. Diary, September 6, 1660, quoted in Familiar Quotations by John Bartlett, Centennial Edition 1955 (p. 284).

Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 591, 88 L.Ed. 754 (1943).

 The form of relief is addressed to the discretion of the court as guided by the principles of equity. See Meredith v. Winter Haven, 320 U.S. 228, 235, 64 S.Ct. 7, 88 L.Ed. 9 (1943); Berman v. Narragansett Racing Association, 48 F.R.D. 333 (D.R.I.1969). See also Woods v. Witzke, 174 F.2d 855 (6th Cir. 1949).

One maxim of equity which might, though not in a technically accurate sense, literally describe the result is "equality is equity." The just result, then, and the result which this court adopts, is to order that, just as the fault is shared, so also shall the loss be shared. Plaintiffs shall recover damages in the amount of one-half of the loss, or $4,-568.27 [12] and court costs. No attorney fee is allowed.

An appropriate order may be presented by plaintiffs.

---

12. When the Control Data stock was sold, there was a loss on the stock of $9,136.55.