Peter A. MOHOLT et al., Plaintiffs,

v.

DEAN WITTER REYNOLDS, INC., et al., Defendants.

Civ. A. No. 78–1788.

United States District Court, District of Columbia.

Oct. 15, 1979.

Philip N. Smith, Jr., Christine E. Carnavos, Washington, D. C., for plaintiffs.

Steven A. Winkelman, T. Grant Callery, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

GESELL, District Judge.

Plaintiffs, a group of related individuals and family-controlled organizations, bring this private damages action as investors, pursuant to the Securities Exchange Act of 1934, §§ 10(b) and 15(b) and (c), and attendant regulations. They seek to recover from defendant brokerage firms and the customer's man handling the accounts losses incurred in the course of stock purchases and sales. It is alleged that these losses were induced by defendants' intentional misrepresentations of fact material to the transactions. By motion for summary judgment, defendants ask the Court to dismiss the complaint on the ground that plaintiffs are barred from recovery by the doctrine of *in pari delicto*. The matter has been fully briefed and argued on both sides.

Facts recited in the complaint or developed by depositions of plaintiffs, which for purposes of defendants' motion must be accepted as conclusive, reveal that plaintiffs Peter Moholt and Herbert Brooker sought tips from defendants concerning prospective mergers. These plaintiffs had for some time been purchasing stocks in reliance on what they were told and perceived to be inside information. Between October, 1977, and February, 1978, plaintiffs were thus induced to purchase stock in two companies through false representations to the effect that each company was a candidate for imminent merger or takeover. Plaintiffs substantially increased their stock positions based on the purportedly inside information; when the stocks declined and heavy losses were incurred, plaintiffs filed suit. Other irregularities on the part of defendants' customer's man also are alleged.

Defendants argue here that plaintiffs must be denied recovery under the doctrine of *in pari delicto*, since they themselves violated the antifraud provisions of the securities laws by purchasing stock on the open market without disclosing all relevant information to the sellers. *See SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 848 (2d Cir. 1968), *cert. denied sub nom. Coates v. SEC*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). As tippees and experienced, sophisticated traders, plaintiffs were engaged in potentially fraudulent transactions with respect to the investing public; their conduct is actionable under the securities laws even if the information supplied was false. 15 U.S.C. § 78j(b).

The present motion presents the question whether or not in such circumstances a broker should be immunized from financial liability because his customers knowingly sought to profit from inside information which they had reason to believe they were receiving to their private advantage over others trading in the same stocks. The availability of the common law *in pari delicto* defense in the context of a federal regulatory framework dependent upon private enforcement actions has been seriously questioned. *See Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968). The defense has only recently been invoked in the securities law area and courts are divided over its applicability to private suits under section 10(b) and rule 10b–5. *Compare Tarasi v. Pittsburgh Nat'l Bank*, 555 F.2d 1152 (3d Cir.), *cert. denied*, 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed.2d 451 (1977), *and Kuehnert v. Texstar Corp.*, 412 F.2d 700 (5th Cir. 1969), *with Nathanson v. Weiss,*

*Voisin, Cannon, Inc.*, 325 F.Supp. 50 (S.D.N.Y.1971).

■ In order for the defense to be applicable in a securities fraud action, two conditions must be satisfied. There must be substantially equal fault between the parties, in this instance the broker-tipper and the customer-tippee. In addition, it must be determined that the regulatory purpose of the securities laws, protection of the investing public, is best served by allowing rather than disallowing the defense. *See Nathanson v. Weis, Voisin, Cannon, Inc., supra*, 325 F.Supp. at 52–58; *Tarasi v. Pittsburgh Nat'l Bank, supra*, 555 F.2d at 1161–64.

■ Neither condition is satisfied here. On the facts presented, defendants' customer's man purported to be furnishing inside tips to these plaintiffs, he made clear that what he was offering was non-public information and he shared the information as part of a series of transactions involving these two stocks, while embellishing his communications with an aura of secrecy. Such conduct is prohibited. It is not suggested in plaintiffs' depositions that the broker was coerced or pressured by his customers into purporting to provide inside information in this instance; indeed plaintiffs indicate that he voluntarily and regularly supplied such non-public information on numerous other stocks over a period of years.

■ Brokers such as defendants are in the position of quasi-fiduciaries; they are held to a high degree of trustworthiness and fair dealing. In the complex, highly regulated securities field, primary responsibility must rest on licensed brokers and their employees in order to achieve maximum conformance with federal statutes and implementing regulations. *See Nathanson v. Weis, Voisin, Cannon, Inc., supra; Rolf v. Blyth Eastman Dillon & Co.*, 424 F.Supp. 1021, 1036 (S.D.N.Y.1977), *aff'd in part*, 570 F.2d 38 (2d Cir.); *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978). *See also Hanly v. SEC*, 415 F.2d 589 (2d Cir. 1969); *Avery v. Merrill Lynch,*

*Pierce, Fenner & Smith*, 328 F.Supp. 677 (D.D.C.1971). A licensed broker engaging in conduct such as reflected by this record cannot be said to be equally at fault with his receptive but duped investors, no matter how experienced those investors may be.

■ The broker-dealer as tipper presents a greater threat than the customer-tippee to the integrity of the regulatory framework that prohibits trading on material inside information. Brokers, far more than customers, have access to sources of inside information. Preventing confidential dissemination of such information is most effectively achieved by discouraging the initial illicit disclosure. *See Nathanson v. Weis, Voisin, Cannon, Inc., supra*, 325 F.Supp. at 56–58. Further, the Court takes judicial notice of a tendency on the part of brokers to suggest or intimate that they are in possession of information not generally available. By insisting that brokers who tip must be held to act at their peril, courts discourage such a deceptive course of dealing, and at the same time avoid encouraging a conspiracy of silence between tippers and tippees. Only through private enforcement actions can the rules requiring disclosure or abstention become the controlling standard of the securities market place.

It is argued that the customer-investor is given an undue advantage since of course he will pocket gains and only sue when he loses. Not only is the law developing to force his disgorgement of profit under certain circumstances, but given the heavier responsibility placed on the broker it would defeat public policy to exonerate him in cases where his customer is a knowing recipient of his improper sales tips.

Defendants' motion for summary judgment is denied.

SO ORDERED.