**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Plaintiff,**

v.

**Rolando CHENG and Anita Ong Cheng, Defendants and Third–Party Plaintiffs,**

v.

**William J. GRACE, Jr., Third–Party Defendant.**

**Civ. No. 86–2545 (RCL).**

United States District Court, District of Columbia.

Aug. 2, 1988.

Jeffrey P. Bloom (argued), Scott J. Bomson and Stuart J. Gordon with him on brief, Baskin, Flaherty, Elliott, Mannino & Gordon, Washington, D.C., for plaintiff and third-party defendant Grace.

Joel M. Finkelstein (argued), Margolius, Davis, Finkelstein & Rider, Washington, D.C., for defendants Cheng and third-party plaintiffs.

## MEMORANDUM OPINION AND ORDER

LAMBERTH, District Judge.

Plaintiff Merrill Lynch, Pierce, Fenner & Smith, Inc. brings this action against Rolando and Anita Ong Cheng to recover a debt they allegedly owe as a result of securities transactions. The Chengs have counterclaimed against Merrill Lynch, and brought a third party complaint against broker William J. Grace, Jr., for breach of fiduciary duty, negligence, fraud, and violations of federal securities laws. Grace has responded with a motion to dismiss and for summary judgment on all counts.

### FACTS

In their amended third party complaint, the Chengs allege that Rolando Cheng contacted broker Grace in April, 1985, to discuss investment opportunities. It was agreed that Grace, an employee of Merrill Lynch, would act as the Chengs' broker in the purchase and sale of options for their account, under an agreement in which every transaction was to be subject to the Chengs' prior approval. In addition, Grace was evidently instructed to monitor the Chengs' Joint Standard Option Account against their trading activity, making sure that their potential liability on the put and call options they owned did not exceed their balance in the Joint Account.

Grace acted as broker for the Chengs for approximately one year. They allege that he engaged in transactions on May 5, 1986 which they did not authorize, contrary to agreement, and which exceeded the balance in their Joint Standard Operating Account by over $119,000, contrary to their previous instruction to him. This forms the basis for count I of the Chengs' amended third party complaint (breach of fiduciary duty), as well as count III (fraud). In addition they allege that Grace failed to properly apprise himself of their financial situation, and based thereon, to advise and direct them on a financially prudent course. This forms the basis for count II (negligence) and count IV (violation of federal securities law).

In an affidavit submitted with his motion, Grace states that Dr. Cheng represented himself as a sophisticated investor, that Dr. Cheng rarely followed Grace's recommendations, and that Dr. Cheng followed them not at all in his options trading, with Grace merely serving as a "sounding board" for Dr. Cheng's questions. The Chengs substantially dispute this in their response to interrogatories, stating that all transactions on their account, and especially their options trades, were the result of recommendations by Grace.

### DISCUSSION

Summary judgment is properly granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c). In his motion for dismissal and for summary judgment, Grace's fact showing consists of a short affidavit. In it, he addresses only one of the fact issues raised by the Chengs in their third party complaint, to the effect that Grace advised and directed them along a financially imprudent course, by claiming that Grace's role was primarily a passive one and that the Chengs rarely followed his advice. This in turn is flatly contradicted by the Chengs in their response to interrogatories. Defendant's Answers to Plaintiff's Interrogatories, no. 7.

Other than this, Grace's affidavit either sets forth facts that the Chengs have already pleaded (that the Chengs initiated the first contact with Grace in 1985, and that Grace had no discretionary power over their account at Merrill Lynch); or it asserts facts that are either immaterial or at most only tangential to the Chengs' claims (Dr. Cheng's original call to Grace was unsolicited, and during their relationship Dr. Cheng was using other brokerage firms including a discount brokerage house). There is nothing else. Grace addresses no other material fact pled by the Chengs. Nowhere does he challenge that he engaged in the alleged unauthorized transactions of May 5, 1986, or that such transactions exceeded the balance in the Chengs' Joint Standard Option Account. Further, there is no mention of the alleged

terms of their working agreement, or that the alleged unauthorized transactions violated it, or any claim by Grace as to what other possible terms were contained in his agreement with the Chengs. Neither does Grace address the allegation that the recommendations even he implicitly acknowledges the Chengs followed were ill suited to their financial situation.

Thus Grace has done nothing to materially alter the factual setting pled by the Chengs: he either fails to challenge, or agrees, with each of their averments except for the one he directly contradicts. He presents nothing that pierces their allegations, nor does he introduce facts that go beyond those pled by the Chengs which might present an alternate ground for disposition. In terms of Rule 56(c), it is not that there is no genuine issue of material fact: *every* fact issue before the court is either left exactly as the Chengs have pled it, or is in dispute. Therefore Grace's motion for summary judgment must be denied.

Since Grace has also sought dismissal under FRCP 12, and since he has filed no pleading as yet, his motion will be regarded as brought under FRCP 12(b)(6) for failure to state a claim upon which relief can be granted. The Court therefore will consider only Grace's attacks on the legal sufficiency of the Chengs' third party complaint, under the facts as they have pled them.

*Count I: Breach of Fiduciary Duty*

Although not made explicit, it is apparent that the Chengs base the existence of a fiduciary relationship between themselves and Grace on the trust and confidence they placed in Grace's agreement that he would obtain their prior approval on all transactions, and that he would not allow their options purchases to exceed the balance in their Joint Standard Option Account. Thus they claim that the unauthorized transactions of May 5, 1986, which exceeded such balance, amounted to a breach of fiduciary duty.

The existence, as well as the scope of a fiduciary relationship depends on the factual nature of the relationship. It is certainly true that the enhanced duties of a fiduciary may be imposed on a broker in his dealings with a client. *Moholt v. Dean Witter Reynolds, Inc.*, 478 F.Supp. 451, 453 (D.D.C.1979) (defendant stock brokers were regarded by the court as quasifiduciaries, and held to a high degree of trustworthiness and fair dealing), *Avern Trust v. Clarke*, 415 F.2d 1238, 1239–1240 (7th Cir. 1969), *cert. denied*, 397 U.S. 963, 90 S.Ct. 997, 25 L.Ed.2d 255 (1970) (existence of fiduciary relationship is a question of fact, the court asking whether a relationship of trust and confidence existed between the client and broker and whether the client depended thereon and acted accordingly); *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1026 (6th Cir.1979); *see also Vicki Bagley Realty, Inc. v. Laufer*, 482 A.2d 359, 364 (D.C.1984) (real estate broker, like any other agent, owes a fiduciary duty to his principal).

Grace counters that a fiduciary relationship can not exist where the client's account is non-discretionary (that is, where the broker may execute transactions only with the customer's prior approval) as it was in the present case. But this misses the mark. To the contrary, the Chengs assert they trusted and relied on Grace's agreement that the account *would* be non-discretionary, and that Grace would get prior approval on all transactions.

Further, the case cited by Grace at oral argument for his non-discretionary account proposition, *Caravan Mobile Home Sales, Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 769 F.2d 561 (9th Cir.1985), is inapposite. *Caravan* dealt with a broker's duty to continue furnishing information regarding a customer's stock after the customer purchased it. The court found there was no such duty under the facts of the case, since the plaintiffs failed to offer proof that the broker exercised continuing control over their accounts or that he had acted as their investment advisor. In that situation, the fact that the account was non-discretionary was clearly relevant to a finding that the broker was under no duty to continue furnishing plaintiffs information on their stocks after they had made their decision to purchase. The court did not hold that a non-discretion-

ary account forecloses a fiduciary relationship between broker and client; it simply might limit its scope under facts such as those present in that case to the time between placement of an order by a customer and subsequent purchase. *Id.* at 567.

Finally the Court notes that *Moholt, supra,* and *Mansbach, supra,* imposed fiduciary duties on brokers handling non-discretionary accounts. Therefore, the Court finds the Chengs' allegation of a relationship of trust and confidence surrounding the obligations allegedly breached by Grace sufficient to state a cause of action for breach of fiduciary duty.

 The Court also finds that Grace can be held individually liable for breach of fiduciary duty despite the fact that he was acting throughout as an agent for Merrill Lynch. *Moholt, supra* (plaintiff could recover against brokerage firm and customer's man), *Avern Trust, supra* (plaintiff sued brokerage firm for fraud, and its president who allegedly committed the fraud).

*Count II: Negligence*

 The Chengs' negligence count is based on the so called "suitability rule" promulgated by the National Association of Securities Dealers (NASD), in Article III, Section 2 of its Rules of Fair Practice. In particular, the Chengs allege that Grace was not diligent in evaluating their financial situation, and based thereon, in advising and directing them on a financially suitable course. Rather, they claim he failed to assess their financial position and advised them to invest in inappropriately high risk investments.

It is clear from the case law that a stockbroker can be held liable to his client for negligence. 4 S. Speiser, C. Krause & A. Gans, *The American Law of Torts* § 15:125 (Lawyer's Co-op 1987), and cases cited therein. On the other hand, it is not so clear that there is a private federal right of action based on a violation of NASD rules. *See* 54 ALR Fed 1 (1981). (The D.C. Circuit has not decided this issue).

However, even if the D.C. Circuit holds that no private claims for violation of NASD rules may be brought, the Chengs' claim for negligence, which is based on violation of such a rule, would not improperly circumvent such a holding for at least two reasons. First, violation by Grace of the rule will not automatically result in his being held liable for negligence; it would simply be a factor for consideration by the jury as to whether he acted as a "reasonable" person in his conduct toward the Chengs and their account with Merrill Lynch. *Nelson v. Hench,* 428 F.Supp 411, 420 (D.Minn.1977). In addition, the Chengs are bringing a common law claim, and not a federal claim, against Grace. *See Colonial Realty Corp. v. Bache & Co.,* 358 F.2d 178, 182–83 (2d Cir.1966) for a discussion of the consequences of transforming a common law claim for negligence or breach of contract, into a federal cause of action based on a violation of stock exchange rules.

*Count III: Fraud*

 The Chengs' fraud claim is based on the alleged unauthorized transactions of May 5, 1986 by Grace in violation of their prior agreement, which exceeded the balance in the Chengs' Joint Standard Option Account, also in violation of their prior agreement. The Chengs allege that Grace's promises pursuant to both agreements were made with knowledge they were untrue, or with reckless disregard for their truth; that by making them Grace intended to deceive the Chengs and induce their reliance thereon; that in reliance thereon, the Chengs opened their Joint Standard Option Account and authorized Grace to execute options transactions on their behalf; and that they were injured by Grace's subsequent breach of the promises he had earlier made.

Grace concedes, correctly, that a fraud claim may be based on a promise if when the promisor makes it, he intends not to perform it. *Bennett v. Kiggins,* 377 A.2d 57, 60–61 (D.C.1977), *cert denied,* 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978). *See Shear v. National Rifle Ass'n of America,* 606 F.2d 1251, 1259 n. 39 (D.C. Cir.1979). Grace contends, however, that there can be no fraud when the promise was not breached until some thirteen

months after it was made. This has no merit, and in any case the Chengs have not alleged when the promises were made.

Grace also contends that the Chengs' pleading of fraud is not sufficiently particular. Under local law, a fraud claim must allege such facts as will reveal the existence of all requisite elements of fraud, which include: a false representation, in reference to a material fact, made by defendant with knowledge of its falsity and with intent to deceive plaintiff, who subsequently takes action in reliance upon the misrepresentation. *Bennett, supra* at 59. Clearly the Chengs have made such allegations.

Further, Grace's contention that the Chengs' allegations with respect to his intent are purely conclusory, and thus do not meet the particularity requirement, is also without merit. Grace's intent when he made the promises to the Chengs is a matter that is likely within his exclusive knowledge, and will have to be evaluated using extrinsic circumstantial evidence gathered through the discovery process. The Chengs should not be required to know, much less plead such facts at this stage of litigation. Further, even if discovery were complete, determination of a defendant's state of mind is ordinarily inappropriate to resolve on summary judgment, since it involves drawing inferences from facts upon which reasonable people can differ, and should therefore go to a jury. 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2730 (2d ed. 1983). *A fortiori*, it is inappropriate to resolve on a motion to dismiss.

*Count IV: Violation of Federal Securities Laws*

Inexplicably, the Chengs base this count not on the alleged unauthorized transactions by Grace which formed the basis for their fraud claim, but rather on their allegation that he recommended purchases which led the Chengs on a financially imprudent and unsuitable course. They further allege in Count IV, for the first time and in a quite conclusory fashion, that Grace was guilty of material omissions in the recommendations he made to the Chengs, which misled them, resulting in a violation of section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77 1(2) (1982), and of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982) and Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5 (1987).

1. *Section 12(2)*

■ Section 12(2) creates a federal cause of action against "Any person who offers or sells a security...." in interstate commerce by means of a fraudulent pretext.

Grace contends that the one year statute of limitation applicable to section 12(2), contained in section 13 of the Act, 15 U.S.C. § 77m, has expired, barring the Chengs' claim against Grace since the acts complained of occurred between April, 1985 and May, 1986, while the amended third-party complaint was not filed until July, 1987. However, the original complaint by Merrill Lynch was filed in September, 1986, and Chengs' original third-party complaint in October, 1986. Under the circumstances of this case, the amended third-party complaint relates back to the original filing in October 1986. Further, an action under section 12(2) must be brought within one year from *discovery* of the untrue statement or omission, or after discovery should have been made by exercise of reasonable diligence, so long as the action is ultimately brought within three years of the date of sale. Thus, dismissal on this ground is premature given the absence of facts on this issue.

However, the Court must nonetheless dismiss the Chengs' claim under section 12(2), since the statute does not apply to Grace by its terms. It restricts conduct by "Any person who offers or sells a security...." Grace did not offer or sell securities to the Chengs; rather, he acted as their broker, or purported to act as broker on their behalf in purchasing securities. Although it has been held that a "seller" under section 12(2) is not necessarily just a person who conveys title and no one else, there is no reading of the statute that would broaden its application to a broker/defendant who *buys* on behalf of a

customer/plaintiff. *Admiralty Fund v. Jones*, 677 F.2d 1289 (9th Cir.1982), cited by the Chengs, applied section 12(2) to the attorney of a corporation whose stock plaintiff purchased, where the attorney misrepresented to plaintiff that the stock was unrestricted and freely transferable. *Id.* at 1294. The court held that the attorney might be liable under section 12(2), depending on the degree to which he participated in the fraud surrounding the negotiations leading up to sale.

Interestingly, the court was explicitly doubtful that even such a mildly expansive reading of section 12(2) would hold up in light of recent Supreme Court decisions applying principles of strict statutory construction to federal securities acts. *Id.* at 1294, n. 4. There is very little doubt at all that including broker Grace in the sweep of section 12(2) would not find approval in a higher court. *See e.g., Touche Ross & Co. v. Redington*, 442 U.S. 560, 578, 99 S.Ct. 2479, 2490, 61 L.Ed.2d 82 (1979) (invocation of the "remedial purposes" of the 1934 Act is unavailing to justify reading one of its provisions more broadly then its language and the statutory scheme reasonably permit).

2. *Section 10(b) and Rule 10b–5*

It is here that Grace's assertion that the Chengs have failed to plead with sufficient particularity must prevail. The Chengs have chosen to base this count solely on alleged omissions by Grace when he recommended purchases to the Chengs; it does not refer to the alleged unauthorized transaction by Grace of May 5, or to allowing options transactions to exceed the Chengs' balance in their Joint Standard Option Account. The Chengs give no indication of what the material omissions by Grace were, either in their amended third-party complaint, in their opposition to Grace's motion, or in their responses to discovery.

Under Federal Rule of Civil Procedure 9(b), a complaint alleging violation of Section 10(b) and Rule 10b–5 must be pleaded with particularity. *See Devaney v. Chester*, 813 F.2d 566, 568 (2d Cir.1987). Under the facts pled here, the Chengs did not sufficiently set forth the alleged omissions which form the basis for their 10(b) claim.

Accordingly, it is hereby

ORDERED, that the third-party defendant's motion for summary judgement is denied, and it is further

ORDERED, that the third-party defendant's motion to dismiss is granted as to count IV of the third-party complaint, violation of federal securities laws, and denied as to all other counts. SO ORDERED.