**Philip GUTTER, Plaintiff-Appellant Cross-Appellee,**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Defendant-Appellee Cross-Appellant.**

Nos. 79–3516, 79–3517.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 16, 1981.

Decided April 3, 1981.

Rehearing and Rehearing En Banc Denied May 15, 1981.

Philip Gutter, pro se.

David J. Young, Dunbar, Kienzle & Murphey, Columbus, Ohio, John P. Witten, Columbus, Ohio, for defendant-appellee cross-appellant.

Before MERRITT, BAILEY BROWN and KENNEDY, Circuit Judges.

BAILEY BROWN, Circuit Judge.

## I

This case grows out of a series of margin transactions executed by appellee and cross-appellant, Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch), on behalf of appellant and cross-appellee, Philip Gutter (Gutter), in September and October of 1974. Gutter made a number of short sales and wrote a number of option contracts through his broker Merrill Lynch, all on margin. Although some of the short sales were successful, most of the transactions resulted in losses to Gutter. To finance his margin trading Gutter deposited $122,000 in corporate bonds in a special account with Merrill Lynch. All of Gutter's trades were financed with loans Merrill Lynch made against the collateral of the bonds.

Gutter brought this action to recover his losses from Merrill Lynch, and in his amended complaint stated two types of claims. First, Gutter claimed that Merrill Lynch had violated the anti-fraud provisions of the Securities Act of 1933, 15 U.S.C. §§ 77 *et seq.*, and the Securities Exchange Act of 1934, 15 U.S.C. §§ 78 *et seq.*, and had committed common law fraud by failing to fully inform him of the risks involved in option trading. He also alleged that Merrill Lynch misrepresented the profits that could be obtained from option trading. Second, Gutter claimed that Merrill Lynch had violated the margin requirements of Section 7(c) of the 1934 Act, 15 U.S.C. § 78g(c), and the regulation implementing Section 7(c), Federal Reserve Board Regulation T, 12 C.F.R. §§ 220.1 *et seq.*, by using his bonds in the special account as collateral for his margin trading rather than calling on Gutter to cover the shortfalls in his margin account. He claimed that Merrill Lynch was liable to him for his losses in the margin account.

As an initial matter the district court granted Gutter's motion for summary judgment on the Regulation T claims. On the authority of our decision in *Spoon v. Walston & Co.*, 478 F.2d 246 (6th Cir. 1973), the district court held that an implied cause of

action existed for a violation of the margin regulations. The district court then found, as Gutter contended, that Merrill Lynch had violated the margin requirements by applying the excess value of Gutter's bonds to his margin account instead of issuing maintenance calls at times when the margin limitations were exceeded. On the basis of stipulated underlying facts, damages were determined by the court to be $7,000.

Gutter's fraud claims were tried to a jury on May 1, 1978. The district court granted a directed verdict for Merrill Lynch on Gutter's claim that Merrill Lynch had violated Sections 12(2) and 17(a) of the 1933 Act, 15 U.S.C. §§ 77*l*(2), 77q(a). The court noted that the protection of these sections was clearly limited to purchasers and, as an option writer, Gutter was plainly a seller and not a purchaser. The 1934 Act and common law fraud claims were submitted to the jury, which returned a verdict for Merrill Lynch.

Gutter has appealed the district court's directed verdict on his fraud claims under the 1933 Act and appealed the method used to calculate damages for Merrill Lynch's violation of the margin requirements of Regulation T. Merrill Lynch appeals both the finding that it violated the margin requirements and the holding that a violation of the margin requirements gives rise to a private cause of action. Merrill Lynch also appeals the calculation of damages flowing from the alleged violations.

We determine that the district court did not err in directing a verdict on the fraud claims under the 1933 Act. We determine, however, that the district court erred in granting summary judgment to Gutter and in awarding him damages for violations of the margin requirements of Regulation T for the reason that a private cause of action cannot be implied for a violation of Regulation T and the statute pursuant to which the regulation was issued. Since we determine that the private cause of action cannot be implied, we need not decide whether Regulation T was violated by Merrill Lynch or whether the district court applied the

correct measure of damages for such violation.

## II

Gutter's claims under the 1933 Act related only to his option transactions. It is clear that only purchasers have standing under Sections 12(2) and 17(a) of the 1933 Act. These provisions simply are not designed to protect sellers, and this is obvious from the face of the statutes. They have also been consistently interpreted to provide protection only to purchasers. *See, e. g., Simmons v. Wolfson,* 428 F.2d 455 (6th Cir. 1970) *(per curiam), cert. denied,* 400 U.S. 999, 91 S.Ct. 459, 27 L.Ed.2d 450 (1971).

It is furthermore obvious that with regard to the option contracts Gutter was a seller and not a purchaser. Under the terms of the Chicago Board Options Exchange Clearing Corporation (CBOE), whose options Gutter was writing, the writer receives a premium and agrees to deliver the underlying security to the CBOE on call at a fixed price. The option only exists for a set period of time. The option price of the underlying security is always above the market price at the time the option is written. The writer hopes the market price will not rise above the option price so the holder of the option will not exercise it. If the price of the security rises above the option price, the holder will exercise the option since he can make an immediate profit by selling the stock he purchased at the lower option price at the then higher market price. If the option is uncovered (i. e., the option writer does not already own the shares), the writer will have to cover by purchasing securities at the existing market price and delivering them at the lower option price. The option writer makes the same gamble as a short seller in that he hopes the market will go down over the life of the option. If the market declines he makes a profit (the premium the purchaser paid for the option) and does not have to purchase or sell the underlying security. It is clear that an option writer sells the right to purchase securities and is not purchasing anything. The fact that he may later have

to purchase securities to cover his option is irrelevant to the determination of whether the writing of the option contract is itself a purchase or sale. The district court correctly determined that Gutter was a seller with regard to the option contracts. Although the anti-fraud provisions of the 1934 Act protect both purchasers and sellers, the anti-fraud provisions of the 1933 Act protect only purchasers. Therefore, the district court correctly granted a directed verdict for Merrill Lynch on the 1933 Act claims.

### III

We next turn to the question whether a private cause of action can be implied in favor of a broker's customer against the broker for a violation of the margin requirements established by Regulation T issued pursuant to Section 7(c) of the 1934 Act.

The district court, apparently with some reluctance, concluded that a private cause of action must be implied. It pointed out that the implication of a cause of action means that, so far as the customer is concerned, it is "heads I win, tails you lose" where there is a loss in a margin account. The district court concluded that this result was compelled by the *per curiam* decision of this court in *Spoon v. Walston & Co.*, 478 F.2d 246 (6th Cir. 1973). We conclude, however, that under the circumstances presented here, *Spoon* is not controlling and a private cause of action cannot be implied. The reasons why we conclude that *Spoon* is not controlling are: (1) an amendment to Section 7 of the 1934 Act that was not applicable to the transactions involved in *Spoon* is applicable here; (2) in a recent decision this court indicated that the rule followed in *Spoon* may, in the light of more recent decisions in other courts, no longer be viable; and, (3) recent decisions of the Supreme Court establishing standards for the implication of private causes of action from criminal or regulatory statutes make clear that a private cause of action should not be implied here.

In 1970, Section 7 of the 1934 Act was amended by adding Section 7(f), which made it illegal for customers of brokers to accept credit in excess of limits permitted by the margin requirements of the regulation issued pursuant to Section 7. Prior to the enactment of Section 7(f), it had been illegal, under Section 7(c), for brokers to extend excess credit but not illegal for customers to accept it. The amendment placed the responsibility on both the broker and the customer to observe the margin requirements. The Federal Reserve Board issued Regulation X, 12 C.F.R. §§ 224 *et seq.*, to effectuate this change in the law.

The margin transactions involved in *Spoon* took place in 1971, and the broker contended in the district court, *inter alia*, that the addition in 1970 of Section 7(f) to the Act prevented the implication of a cause of action in favor of the customer. The district court in *Spoon* recognized this argument in its opinion, 345 F.Supp. 518, 521–22 (E.D.Mich.1972), but pointed out that the amendment did not take effect until after the margin transactions involved in the case had taken place. It then concluded that a private cause of action in favor of the customer against the broker must be implied. Even so, and even though the broker had been guilty of fraud on the New York Stock Exchange in covering up its violations of the margin requirements, the district court, applying equitable principles, allowed the customer to recover only one-half of the loss incurred in the margin account.

In its brief *per curiam* affirming the district court in *Spoon*, 478 F.2d 246 (6th Cir. 1973), this court relied principally on *Pearlstein v. Scudder & German*, 429 F.2d 1136 (2nd Cir. 1970) (*Pearlstein I*), cert. denied, 401 U.S. 1013, 91 S.Ct. 1250, 28 L.Ed.2d 550 (1971), saying: "We agree with the second Circuit that Congress intended for the loss in transactions of of this type generally to fall upon the broker." 478 F.2d at 247. *Pearlstein I*, like *Spoon*, dealt with transactions to which the 1970 amendment (Section 7(f)) did not apply.

In *Utah State University v. Bear, Stearns & Co.*, 549 F.2d 164 (10th Cir.), *cert. denied*, 434 U.S. 890, 98 S.Ct. 264, 54 L.Ed.2d 176 (1977), the court held that as the 1970 amendment to the 1934 Act (Section 7(f)) and Regulation X were applicable to the transactions involved, no private cause of action in favor of the broker's customer could be implied. It pointed out that Section 7(f) and Regulation X were not applicable to the transactions involved in *Pearlstein I* and *Spoon*. The Tenth Circuit also pointed out that when *Pearlstein* came before the Second Circuit again on the question of damages, 527 F.2d 1141, 1144 (2nd Cir. 1975) (*Pearlstein II*), the Second Circuit recognized that since the advent of the 1970 amendment and Regulation X, its prior decision holding that a private cause of action must be implied was of doubtful validity.

In *Stern v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 603 F.2d 1073 (4th Cir. 1979), the court, after reviewing at length the history of litigation on this issue, came to the generally accepted conclusion that the overall purpose of Section 7(c) and Regulation T, as macroeconomic policy, was to control the quantum of credit in the economy. It came to the further conclusion that, with the enactment of Section 7(f) and Regulation X, it could no longer be said that even an ancillary purpose of Section 7(c) was to protect customers of brokers from losses that occurred where margin requirements were violated. Accordingly, the court concluded that a private cause of action could not be implied in favor of the customer.

In *Fryling v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 593 F.2d 736 (6th Cir. 1979), this court determined that the broker that had been sued by a customer on the basis of an alleged violation of Section 7(c) and Regulation T had not in fact violated those provisions and, therefore, it was not necessary for this court to determine whether a private cause of action could now be implied. This court pointed out there were contrasting views on this issue, inviting comparison of *Pearlstein I*, on which it had relied in *Spoon*, with *Pearlstein II* and *Utah State University*. *Id.* at 745, n. 8.

Beginning with *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court has set down more stringent rules for implying private causes of action for violation of criminal and regulatory statutes. In *Cort*, the Court stated the rules to be: whether plaintiff is one of a class for whose especial benefit the statute was enacted; whether there is an indication of legislative intent to create a private remedy; whether implication of a private remedy is consistent with the legislative purpose; and whether such a cause of action is traditionally relegated to state law. *Id.* at 78, 95 S.Ct. at 2087. In *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), the Court stated that it did not intend by its holding in *Cort* to give equal weight to all four of the aforementioned factors, and that the central inquiry was whether Congress intended to create a private cause of action. Id. at 575, 99 S.Ct. at 2489.

In *Piper v. Chris-Craft Industries, Inc.*, 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977), the Court stated that the threshold issue was whether a tender offeror such as Chris-Craft, whose activities were regulated by the Williams Act, 15 U.S.C. § 78m(d)(1), had a cause of action for damages against other parties whose activities were regulated by the Act, on a claim that violations of the Act by other parties frustrated the tender offeror's (Chris-Craft's) efforts to obtain control of the target corporation. *Id.* at 24, 97 S.Ct. at 940. In answering this question in the negative, the Court, referring to *Cort*, stated, *inter alia* :

There, the Court identified four factors as "relevant" in determining whether a private remedy is implicit in a statute not expressly providing one. The first is whether the plaintiff is " 'one of the class for whose *especial* benefit the statute was enacted . . . .' " Id., at 78, 45 L.Ed.2d 26, 95 S.Ct. 2080. (Emphasis in original.) As previously indicated, examination of the statute and its genesis shows that Chris-Craft is not an intended beneficiary

of the Williams Act, and surely is not one "for whose *especial* benefit the statute was enacted." Ibid. To the contrary, Chris-Craft is a member of the class whose activities Congress intended to regulate for the protection and benefit of an entirely distinct class, shareholders-of-ferees. As a party whose previously unregulated conduct was purposefully brought under federal control by the statute, Chris-Craft can scarcely lay claim to the status of "beneficiary" whom Congress considered in need of protection.

*Id.* at 37, 97 S.Ct. at 947.

Applying these decisions to the instant case, we conclude that they do not permit the implication of a private cause of action in favor of Gutter. In the light of the enactment of the 1970 amendment to the 1934 Act (Section 7(f)) and the issuance of Regulation X, Gutter is not in a class for whose especial benefit this statute was enacted and, indeed, Gutter is a party whose conduct has been brought under control by the statute. Moreover, there is no indication of Congressional intent to create a cause of action in favor of the broker's customer against the broker, and the enactment of Section 7(f) indicates a contrary intent.

We therefore conclude that the judgment of the district court should be affirmed insofar as it denied relief to Gutter. We further conclude that the judgment of the district court must be reversed insofar as it granted relief to Gutter. The cause is therefore remanded to the district court with direction to enter a judgment dismissing the action with prejudice. No costs assessed.