MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC.,
Plaintiff/Counter-Defendant,

and

Alberto Suarez, Counter-Defendant,

v.

Reinaldo L. DEL VALLE,
Defendant/Counter-Plaintiff.

No. 80–3142–CIV–EPS.

United States District Court,
S. D. Florida,
Miami Division.

Oct. 15, 1981.

Bennett Falk, Miami, Fla., for plaintiff/counter-defendant.

Brian F. Spector, Miami, Fla., for defendant/counter-plaintiff.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE COUNTER–DEFENDANTS' MOTION TO DISMISS THE COUNTERCLAIM

SPELLMAN, District Judge.

The complaint in the case at bar seeks to recover a $55,474.57 debit that the Defendant, Reinald L. Del Valle (hereinafter "Del Valle"), incurred by trading in various call options. It is alleged that Del Valle issued two checks, payable to the Plaintiff, Merrill Lynch, Pierce, Fenner & Smith, Inc., (hereinafter "Merrill Lynch"), to pay for the options traded. Both checks were returned to Merrill Lynch, unpaid, because the payor bank had received "stop payment" orders on the checks. Thereafter, the Defendant liquidated his entire account, leaving a debit balance of $55,474.57, for which payment has been demanded and refused.

The Defendant has filed a six count counterclaim against Merrill Lynch and Alberto Suarez, (hereinafter "Suarez"), an account executive employed by Merrill Lynch. Del Valle claims that the counter-Defendants have violated Sections 7(c) and 10(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. §§ 78(g)(c), 78j(b), Regulation T and Rule 10b–5, promulgated thereunder, 12 C.F.R. § 220.1 *et seq.*, and 12 C.F.R. § 240.10b–5, Section 517.301 of the Florida Statutes and he has also made a claim based on Florida common law fraud.

The counterclaim alleges, *inter alia*, that:

1. Prior to July 1979, Del Valle had not traded securities and had no experience in margin accounts or the options market;

2. In July of 1979, Del Valle opened an account with Merrill Lynch and, in spite of Del Valle's lack of investment sophistication, Merrill Lynch and Suarez recommended that he become involved in trading options;

3. In order to induce Del Valle to become involved in trading options, Merrill Lynch and Suarez made the following material misstatements and/or omissions:

a. that Merrill Lynch and Suarez were experts in trading options, upon whose advise Del Valle could substantially rely;

b. that Suarez would follow any instructions given by Del Valle regarding the purchase and sale of options; and

c. that Del Valle could pay for the purchase and sale of options and other securities by "settling up" at various intervals by paying the difference between the cost of purchases and the proceeds generated from sales during that interval; and

d. that Merrill Lynch and Suarez represented to Del Valle that Boeing was a suitable investment in October of 1980 while, at the same time, Merrill Lynch was advising other customers to sell their investments in Boeing;

4. By prearrangement, Merrill Lynch and Suarez made numerous recommendations regarding transactions for Del Valle in order to induce him to engage in excessive options trading, or churning, which could not be justified at any time as being suitable for or in the best interest of Del Valle; and

5. By allowing Del Valle to pay for the purchase and sale of options and other securities by "settling up" at various intervals, the Counter-Defendants violated Regulation T and Section 7 of the Exchange Act and the resulting liquidation of Del Valle's option positions directly and proximately caused damage to Del Valle.

██ Merrill Lynch and Suarez have jointly and independently moved to dismiss the counterclaim on several grounds. The first argument, which is advanced by Suarez individually, is that Federal Rule of Civil Procedure 13(a) does not permit him to be named as a counter-Defendant because he was not a party to the original complaint. Rule 13(h) provides, however, that "[p]ersons other than those made parties to the original action may be made parties to a counterclaim or crossclaim in accordance with the provisions of Rules 19 and 20." The Court is of the opinion that Suarez was properly joined as a counter-Defendant pursuant to Rule 20 and, therefore, his motion to dismiss is DENIED.

██ Merrill Lynch and Suarez jointly contend that the Section 10b and Rule 10b–5 claims against them should be dismissed because the circumstances of fraud have not been plead with sufficient particularity to meet the requirements of Federal Rule of Civil Procedure 9(b). The leading case setting forth the pleading requirements for a complaint alleging fraud under the federal securities laws is *Segal v. Gordon*, 467 F.2d 602 (2d Cir. 1972). The Court in *Segal* explained that:

> It is a serious matter to charge a person with fraud and hence no one is permitted to do so unless he is in a position and is willing to put himself on record as to what the alleged fraud consists of specifically. 1A W. Barron & A. Holtzoff, Fed-

eral Practice & Procedure § 302, at 215–16 (Wright, rev. 1960).

467 F.2d at 607. The *Segal* court found that:

> [r]ule 9(b)'s specificity requirement stems not only from the desire to minimize the number of strike suits but also more particularly from the desire to protect defendants from the harm that comes to their reputations or to their goodwill when they are charged with serious wrongdoing.

*Id.* *See also Shemtob v. Shearson Hammill & Co.*, 448 F.2d 442 (2d Cir. 1971); *Felton v. Walston and Co.*, 508 F.2d 577 (2d Cir. 1974); *Denny v. Barber*, 576 F.2d 465 (2d Cir. 1978). Thus, "[m]ere conclusory allegations of fraud, couched in the bare statutory language of the Securities Act will not satisfy Rule 9(b). Rather, the allegations must be accompanied by some delineation of the underlying acts and transactions which are asserted to constitute fraud." *duPont v. Wyly*, 61 F.R.D. 615, 630 (D.Del. 1973) (citations omitted).

██ A review of paragraphs 1 through 21 of the counterclaim shows that Del Valle has listed seven alleged material misstatements and eight alleged omissions. In addition, he has indicated the specific acts of the counter-Defendants which he claims were fraudulent, as well as the approximate dates on which they took place. These allegations are specific enough to give the counter-Defendants the notice they are entitled to and they assure the Court that Del Valle has "investigated . . . the alleged fraud and reasonably believes that a wrong has occurred." *Id.* Accordingly, the motion to dismiss for failure to plead fraud with sufficient particularity is DENIED.

Merrill Lynch and Suarez have moved to dismiss Count III of the counterclaim, Count III purports to state a claim for violations of Section 7(c) of the Securities Exchange Act of 1934, 15 U.S.C. § 78g(c) and Regulation T, promulgated thereunder, 12 C.F.R. § 220.1 *et seq.* Del Valle contends that Count III is a valid cause of action because the Fifth Circuit has recog-

nized the existence of an implied right of action for Section 7 and Regulation T violations. *See McCormick v. Esposito,* 500 F.2d 620 (5th Cir. 1974), *cert. denied* 420 U.S. 912, 95 S.Ct. 834, 42 L.Ed.2d 842 (1975). Merrill Lynch and Suarez argue that this Court should follow the trend in the circuit courts and find that no private right of action exists for such violations. *Stern v. Merrill Lynch, Pierce, Fenner & Smith,* 603 F.2d 1073 (4th Cir. 1979); *Utah State University v. Bear, Stearns & Co.,* 549 F.2d 164 (10th Cir. 1977); *Gutter v. Merrill Lynch, Pierce, Fenner & Smith,* 644 F.2d 1194, 1198 (6th Cir. 1981).

It is the view of this Court that events subsequent to *McCormick* have undermined the bases for that decision and that the ruling in that case is no longer viable. The first of these events occurred in 1970 when Congress amended the Securities Exchange Act with the addition of Section 7(f).[1] This new section of the statute renders the investor equally responsible with the broker for compliance with the margin requirements.

> [After this section was enacted, it could no longer] be fairly inferred that an investor could qualify as a statutory beneficiary of Section 7, entitled to invoke the statute as a basis for a private action in damages in his favor. Neither reason nor precedent can be marshalled in support of a conclusion that Congress, whose intent must be our polestar in this determination of implication *vel non,* ever intended that a statute, which regulated the action of the investor under threat of criminal sanctions, was to be used as a basis for inferring an action in favor of the investor. This follows inescapably from the language of the Court in *Piper v. Chris-Craft Industries, Inc.,* (1977), 430 U.S. 1 at 37, 97 S.Ct. 926, 947, 51 L.Ed.2d 124. There the Supreme Court said that one whose conduct is regulated by a statute

'can scarcely lay claim to the status of beneficiary whom Congress considered in need of protection,' an essential basis for inferring a private action in his favor under any statute.

*Stern v. Merrill Lynch, supra* at 1081.

The event that dealt the fatal blow to the *McCormick* decision was the Supreme Court's ruling in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). In *Cort,* the Supreme Court laid down specific requirements for implying a private right of action under a federal statute.

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted'—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. at 78, 95 S.Ct. at 2088 (Citations omitted).

"The first requirement of *Cort* was well analyzed in *Stern v. Merrill Lynch, Pierce, Fenner & Smith,* 603 F.2d 1073 (4th Cir. 1979), in which Judge Russel wrote:

> The first requirement for establishing an implied right of action on account of a violation of a federal statute, as thus enunciated in *Cort*—what is characterized as the 'threshold test' for such an action, and a test which 'has been central to all implication cases, from the first statutory implication decision in which it

---

1. Although the decision in *McCormick, supra* was not made until after the effective date of Section 7(f), the case was based on transactions that occurred. before the effective date, November 1, 1971.

[the doctrine] was originally formulated' —is that the plaintiff be a member of a class 'for whose especial benefit the statute was enacted.' '[S]atisfaction of the especial benefit criterion,' [as declared in *Cort*] 'is a *necessary*, but not sufficient, basis for obtaining an implied remedy.' (emphasis added). And *Cort* gave a very precise statement of who might qualify and who might not qualify as a statutory beneficiary under this doctrine of a federal implied right of action. To qualify as a statutory beneficiary for whom a private action may be implied, it is not enough that the plaintiff '[has] a financial stake in the outcome of the case' or '[is] at least an incidental beneficiary' or is 'secondarily benefitted,' or that his protection is a secondary or 'subsidiary' purpose of the statute. The requirement of Cort was specific: the protection and benefit of the party seeking such action must be the 'primary congressional goal' of the statute, or, as another has stated it, 'the plaintiff must be the "primary" beneficiary of the statute.' " 603 F.2d at 1085–1086.

*Noe v. Metropolitan Atlanta Rapid Transit Authority*, 644 F.2d 434, 437 (5th Cir. 1981).

■ This "threshold" test cannot be met in a case alleging violations of Section 7 and Regulation T. In *McCormick, supra*, the court stated that:

[a]lthough the congressional committee report which recommended the enactment of Section 7 indicates that the protection of individual investors was a purpose *only incidental* to the protection of the overall economy from excessive speculation, it has been recognized in numerous cases since that time that private actions by market investors are a highly effective means of protecting the economy as a whole from margin violations by brokers and dealers. [*Pearlstein v. Scud-*

*der & German*] 429 F.2d [1136] at 1140 [(2 Cir. 1970)].

500 F.2d at 623 (emphasis added). It is clear from the Court's language that investors are not members of the class "for whose especial benefit the statute was enacted" and it is equally clear to this Court that the Fifth Circuit would not now find, in light of the *Cort* decision, that an implied right of action exists for Section 7 violations. Accordingly, the motion to dismiss Count III of the counterclaim is GRANTED.[2]

■ Counts IV, V and VI of the counterclaim allege causes of action for breach of fiduciary duty, negligence, common law fraud and violation of Section 517.301 of the Florida Statutes. Plaintiff contends that these are pendent claims that should be dismissed based on Judge King's ruling in *Stowell v. Ted S. Finkle Investment Services, Inc.*, 489 F.Supp. 1209 (S.D.Fla. 1980). It is the view of the Court, however, that these Counts constitute compulsory counterclaims under Federal Rule of Civil Procedure 13(a). As such, they fall within the ancillary jurisdiction of the Court and are not pendent claims that can be dismissed based on *Stowell, supra.* 6 Wright & Miller, Federal Practice & Procedure § 1414. Therefore, the motion to dismiss with regard to Counts IV, V and VI is DENIED.

---

**2.** The Court has not held that the alleged violations of Section 7 and Regulation T cannot form the basis of a 10b–5 action. The Court has merely granted the motion to dismiss to the extent that the complaint attempts to set forth

a separate claim for relief based on the alleged violations.

Due to the timing of this Order, it appears that the Eleventh Circuit may have the opportunity to address the issue presented herein.