**Louis W. MATTHEY, et al., Plaintiffs,**

v.

**KDI CORPORATION, et al., Defendants.**

**Civ. No. C–1–88–304.**

United States District Court, S.D. Ohio, W.D.

Nov. 4, 1988.

James Burke, Cincinnati, Ohio, for plaintiffs.

Thomas Calder, Robert Pitcairn, Cincinnati, Ohio, for defendants.

CARL B. RUBIN, Chief Judge.

### ORDER

This matter is before the Court on a motion for partial summary judgment by defendants Ariadne Australia, Ltd. (Ariadne), Impala Pacific Corp., Ltd. (Impala) and Stratton Securities, Ltd. (Stratton) (doc. no. 10). Plaintiffs have filed a memorandum in opposition to the motion (doc. no. 15). For the reasons stated below, defendants' motion is DENIED in part and GRANTED in part.

### Procedural Background

This is a class action brought on behalf of all persons who are beneficial owners of contingent unsecured subordinated notes issued by defendant KDI Corporation in conjunction with a change of control agreement dated September 9, 1986. The named class representative, Matthey, was president, chairman of the board, and chief executive officer of KDI, as well as a KDI shareholder, prior to October 14, 1986. Defendant KDI is a Delaware Corporation with its principal place of business in Cincinnati, Ohio. Defendants Ariadne, an Australian Corporation, and Impala, a Hong Kong Corporation, are principal owners of KDI common stock. Defendant Stratton, a Cook Island Corporation, is the beneficial owner of one million shares of KDI common stock.

The following facts are undisputed: By September 1986, as a result of purchases made throughout 1986, Ariadne, Impala, and Stratton, collectively referred to as the Impala/Ariadne Group, had acquired, or had the option to acquire, approximately 40.1% of the total issued and outstanding shares of KDI common stock. On September 9, 1986, KDI and the Impala/Ariadne Group executed a change of control agreement (the Agreement). Under the terms of the Agreement, a majority of the members of the KDI Board of Directors, including Matthey, resigned effective October 14, 1986. Five individuals designated by the Impala/Ariadne Group became KDI's directors. In conjunction with the Agreement, the former members of KDI's Board of Directors caused KDI notes to issue to KDI shareholders, other than the Impala/Ariadne Group. Approximately 5.6 million KDI notes were issued to KDI shareholders. Each shareholder received one KDI note per KDI share. The note entitled the holder to receive a cash payment on March 31, 1988 equal to the lower of (a) $3.50 per note, or (b) the amount by which $19.125 exceeded the highest average of the daily closing price for KDI common stock for any thirty consecutive trading days between August 21, 1986 and March 31, 1988. The Impala/Ariadne Group purchased approximately 907,000 KDI shares between July 29, 1987 and September 10, 1987. The average trading price for KDI stock during this period exceeded $19.125. On September 10, 1987, KDI notified the holders of the KDI notes that because the KDI stock had reached a thirty-day average trading price of $19.125, the KDI notes were worthless and had been cancelled.

Plaintiffs make the following allegations and claims, which defendants dispute: On August 3, 1987, the Impala/Ariadne Group began implementing a "Purchasing Program" aimed at acquiring KDI stock with the intent of creating a false market and artificially increasing the price of KDI stock above the $19.125 trigger price stipulated in the KDI notes. The Purchasing Program led to the cancellation of the KDI notes for no consideration. The cancellation of the KDI notes constituted a fundamental change in the nature of plaintiffs' investment and a "forced sale" within the meaning of the federal securities laws. Additionally, the Impala/Ariadne Group made untrue statements of material fact in connection with the Purchasing Program that defendants knew or had reason to know were materially false and misleading. The Impala/Ariadne Group also failed to disclose material facts regarding the Purchasing Program. As a result of defendants' actions, plaintiffs have been damaged

in an amount approximating $12,000,-000.00.

Plaintiffs present the following claims for relief: (1) defendants violated § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 (17 C.F.R. § 240.10b–5) by manipulating the price of KDI stock during the period from July 29, 1987 through September 10, 1987 and by making misrepresentations and omitting to state material facts in connection with the Purchasing Program and cancellation of the KDI notes; (2) defendants violated § 17(a) of the Securities Exchange Act of 1933 by making material misrepresentations of fact and failing to disclose material facts in connection with the purchase of KDI stock and cancellation of the KDI notes; (3) defendants violated § 9(a) of the 1934 Act by creating actual or apparent trading activity to force cancellation of the KDI notes; and (4) defendants have committed breach of contract and common law fraud and have violated their duty of good faith and fair dealing by their actions.

Defendants Ariadne, Impala and Stratton move for summary judgment on plaintiffs' claims under the federal securities laws on the ground that plaintiffs were neither purchasers nor sellers of securities and therefore lack standing to bring such claims.

### Summary Judgment

The summary judgment procedure under Fed.R.Civ.P. 56 is designed to secure a just, speedy, and inexpensive determination of any action. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). However, Rule 56(c) permits the Court to grant summary judgment as a matter of law *only* after the moving party has identified as the basis of its motion "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" which demonstrate the absence of any genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2552–53. The party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that

there is a genuine issue for trial." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (*quoting, First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14 (*citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)). The function of the court is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510 (*citing Cities Service,* 391 U.S. at 288–289, 88 S.Ct. at 1592–93). If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967), or is not significantly probative, *Cities Service,* 391 U.S. at 290, 88 S.Ct. at 1593, judgment may be granted. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

### Standing Under § 10(b) And Rule 10b–5

Section 10(b) of the 1934 Act (15 U.S.C. § 78j(b)) provides:

It shall be unlawful for any person directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange;

(b) To use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b–5 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any

means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(1) To employ any device, scheme or artifice to defraud;

(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(3) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

Section 10(b) was intended to bar deceptive devices and contrivances in the purchase or sale of securities. *Supt. of Insur. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12, 92 S.Ct. 165, 168–69, 30 L.Ed.2d 128 (1971). Under the rule established in *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir.), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), plaintiff must either be a seller or purchaser of securities in connection with the securities claims in order to assert a claim for damages under § 10(b). *Gaff v. FDIC*, 814 F.2d 311, 318 (6th Cir.1987) (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 749, 95 S.Ct. 1917, 1931–32, 44 L.Ed.2d 539 (1975) and *Gutter v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 1194, 1196 (6th Cir.1981), *cert. denied*, 455 U.S. 909, 102 S.Ct. 1256, 71 L.Ed.2d 447 (1982); *Simmons v. Wolfson*, 428 F.2d 455, 456 (6th Cir.1970), *cert. denied*, 400 U.S. 999, 91 S.Ct. 459, 27 L.Ed.2d 450 (1971). The *Birnbaum* rule bars three principal classes of potential plaintiffs: (1) potential purchasers of shares who allege they decided not to purchase because of misrepresentations or omissions which made the investment appear less favorable than it was; (2) actual shareholders who allege that they decided not to sell their shares because of misrepresentations or omissions; and (3) shareholders, creditors and perhaps others related to an issuer who suffered loss in the value of their investment due to corporate or insider activities in connection with the purchase or sale of securities which violate Rule 10b–5. *Blue Chip Stamps*, 421 U.S. at 737–38, 91 S.Ct. at 1926–27.

It is undisputed that plaintiffs did not purchase or sell their KDI notes during the period in issue. Nor do plaintiffs allege that they purchased or sold KDI stock during the relevant time period. Nonetheless, plaintiffs claim that they have standing to bring claims for federal securities laws violations under several theories.

### I. "Forced Sale" Doctrine

■ Among the theories espoused by plaintiffs is the "forced sale" doctrine. The "forced sale" doctrine holds that a shareholder should be treated as a seller when the nature of his investment in any ongoing enterprise has been fundamentally changed into a right solely to payment of money for his shares. *Dudley v. Southeastern Factor and Finance Corp.*, 446 F.2d 303, 307 (5th Cir.), *cert. denied*, 404 U.S. 858, 92 S.Ct. 109, 30 L.Ed.2d 101 (1971); *see also Ray v. Karis*, 780 F.2d 636, 640 n. 1 (7th Cir.1985). A party is considered a forced seller when, as a practical matter, he has no option but to surrender a security in exchange for cash in order to realize the value of the security. *Coffee v. Permian Corp.*, 434 F.2d 383, 386 (5th Cir.1970), *cert. denied*, 412 U.S. 920, 93 S.Ct. 2736, 37 L.Ed.2d 146 (1973); *Alley v. Miramon*, 614 F.2d 1372, 1380 (5th Cir. 1980); *Crane Co. v. Westinghouse Air Brake Co.*, 419 F.2d 787, 794 (2d Cir.1969), *cert. denied*, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970); *Dudley*, 446 F.2d at 307–08; *Vine v. Beneficial Finance Co.*, 374 F.2d 627, 635 (2d Cir.1967), *cert. denied*, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967). The doctrine has been applied primarily in cases where the corporation in which the claimant holds securities has been liquidated or merged into another corporation.

The "forced sale" doctrine does not apply when a party has suffered only a diminution in the value of an equity interest, and has not been forced to surrender his securities. *Sargent v. Genesco, Inc.*, 492 F.2d 750, 765 (5th Cir.1974); *see also Karis*, 780

F.2d at 640 n. 1. Moreover, the doctrine has been held not to apply when the corporation in which plaintiff holds securities is an ongoing concern. *Sargent*, 492 F.2d at 765; *see also Rathborne v. Rathborne*, 683 F.2d 914, 920 (5th Cir.1982).

Accepting plaintiffs' allegations as true, plaintiffs' claims do not fit within the "forced sale" doctrine. First, plaintiffs have not been forced into a position where they must surrender their KDI notes in order to realize any value for them. Rather, plaintiffs complain of a dimunition in the value of their KDI notes to zero. None of the cases that have applied the "forced sale" doctrine have extended the doctrine to a situation where the only charge in the nature of the claimant's investment is a loss of value. Second, the corporation in which plaintiffs hold their securities is an ongoing concern. Because the Court has no authority for extending the "forced sale" doctrine to plaintiffs' situation, and because the Court fails to perceive how plaintiffs' situation falls within the reasoning underlying the doctrine, the "forced sale" doctrine cannot confer standing on plaintiffs.

## II. Multi–Step Fraud

■ Plaintiffs also contend that they have standing because the cancellation of the KDI notes was one step in a three-part fraudulent scheme to relieve defendants of their obligation of paying the KDI notes. This scheme allegedly consisted of the following steps: (1) distribution of the KDI notes; (2) the Purchasing Program defendants undertook to acquire KDI stock and raise the stock price above the trigger price specified in the KDI notes; and (3) cancellation of the KDI notes as a result of defendants' manipulation of the market. Plaintiffs allege that they have standing to sue for damages incurred as a result of cancellation of the KDI notes since the cancellation was connected to the fraudulent and manipulative purchase of KDI stock.

The phrase "in connection with the sale or purchase of any security" may apply to a security other than the security the sale of which originated an alleged fraudulent scheme. *Frigitemp Corp. v. Financial Dynamics Fund*, 524 F.2d 275 (2d Cir. 1975). It is sufficient for purposes of standing if the purchaser or seller suffered an injury as a result of deceptive practices touching its purchase or sale of securities as an investor, even if the deceptive practices occurred in connection with a different purchase or sale in which the claimant was not directly involved. *Supt. of Insur.*, 404 U.S. at 12–13, 92 S.Ct. at 168–69.

The above-cited authorities do not alter the *Birnbaum* requirement that plaintiff must have been a purchaser or seller of a security in order to have standing to sue under § 10(b) and Rule 10b–5. They simply hold that the fraud alleged need not have occurred in the actual purchase or sale by plaintiff: it is sufficient if plaintiff is injured in the purchase or sale of a security by fraud that occurred in connection with a purchase or sale by a third party. Plaintiffs cannot avail themselves of the "multi-step" fraud theory because they do not claim that they were purchasers or sellers of securities so as to satisfy the *Birnbaum* requirement.[1]

## III. "Fraud on the Market" Theory

■ Plaintiffs allege that they have standing to bring a damages claim under § 10(b) and Rule 10b–5 based on a "fraud on the market" theory. This theory was developed to address the problem of establishing reliance on a misrepresentation or omission on an individual basis in class actions under Rule 10b–5. *Shapiro v. Merrill Lynch & Co.*, 634 F.Supp. 587, 596 (S.D.Ohio 1986). It allows plaintiffs to base securities fraud claims on allegations that they relied on the integrity of the market, rather than requiring plaintiffs to prove direct reliance on a misrepresentation by defendants. *Id.*

---

**1.** Plaintiffs claim that they were "forced sellers." However, for the reasons discussed above, their claim is not valid.

Thus, the "fraud on the market" theory is relevant to the question of whether plaintiffs have satisfied the causation requirement of § 10(b) and Rule 10b–5. However, it does not come into play unless plaintiffs have standing as purchasers or sellers of securities to bring damages claims under these provisions. Because plaintiffs have failed to allege facts which could support a finding that they were purchasers or sellers of securities, the "fraud on the market" theory is not relevant to this matter.

### Standing Under § 17(a)

■ Plaintiffs also assert damages claims under § 17(a) of the 1933 Act (15 U.S.C. § 78q(a)). That statute prohibits "any person in the offer or sale of securities" from engaging in unlawful conduct. *Gaff*, 814 F.2d at 319. The United States Court of Appeals for the Sixth Circuit has held that the "only persons who have standing to recover damages under § 17(a) are purchasers who acted in reliance on the fraudulent conduct." *Id.; Gutter*, 644 F.2d at 1196–97. It is undisputed that plaintiffs did not purchase securities during the relevant time period. Therefore, this Court is bound by *Gaff* and *Gutter* to find that plaintiffs do not have standing to bring damages claims under § 17(a).

### Standing Under § 9(a)

■ Plaintiffs have also presented claims for damages under § 9(a) of the 1934 Act (15 U.S.C. § 78i(a)). Section 9(a) prohibits the manipulation of securities prices. Although the United States Court of Appeals for the Sixth Circuit has stated as a general proposition that the anti-fraud provisions of the 1934 Act protect both purchasers and sellers (*Gutter*, 644 F.2d at 1197), defendants have not cited any authorities that analyze the question of standing under this particular statute or that hold only a purchaser or seller of securities has standing to bring a damages claim under § 9(a). In the absence of such authorities, the Court will not deny standing to plaintiffs under § 9(a).

### Conclusion

The anti-fraud provisions of the federal securities laws were not intended to remedy every instance of common law fraud or breach of contract. *Marine Bank v. Weaver*, 455 U.S. 551, 556, 102 S.Ct. 1220, 1223–24, 71 L.Ed.2d 409 (1982). Nonetheless, victims of fraud in the securities market who are precluded by the *Birnbaum* rule from bringing federal securities claims are not necessarily barred from recovering damages resulting from fraudulent securities transactions. Such injured parties may be able to obtain relief under state law. *Blue Chip Stamps*, 421 U.S. at 738 n. 9, 95 S.Ct. at 1927 n. 9. Thus, plaintiffs are not precluded from establishing that defendants are liable to them for damages resulting from cancellation of the KDI notes under theories of fraud and breach of contract and violation of a duty of good faith and fair dealing. The Court simply holds that because plaintiffs were neither purchasers nor sellers of securities, they cannot recover damages under § 10(b) and Rule 10b–5 and § 17(a).

It is hereby ORDERED that the motion for partial summary judgment filed by defendants Ariadne, Impala and Stratton is GRANTED with respect to plaintiffs' claims under § 10(b) and Rule 10b–5 and § 17(a) and DENIED with respect to plaintiffs' claims under § 9(a).

IT IS SO ORDERED.