Theodore K. PANEK, Plaintiff,

v.

John BOGUCZ and Painewebber Inc., Defendants.

Civ. A. No. 88–3050.

United States District Court,
D. New Jersey.

May 10, 1989.

Martoglio, Pierri & Russo by Edward G. Martoglio, Montclair, N.J., for plaintiff.

Shanley & Fisher by Matthew Farley, Daniel M. Curzio, Morristown, N.J., for defendants.

OPINION

BISSELL, District Judge.

This matter arises before the Court on the basis of a motion by defendants John Bogucz, account executive, and Painewebber, Inc. for dismissal of Count II of the complaint (an alleged violation of section 12(2) of the Securities Act of 1933, 15 U.S.C. § 771); and a cross-motion by plaintiff Theodore Panek for a determination that his claim under the same section is not subject to arbitration.

## FACTS AND PROCEDURAL BACKGROUND

On July 15, 1988, plaintiff Panek filed a complaint that contained several allegations. Plaintiff charged that defendants had violated (1) § 10(b) and Rule 10b–5 of the Securities and Exchange Act of 1934 (SEA) (Count I); (2) section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l* (Count II); (3) certain rules of the National Association of Securities Dealers (NASD) and the Chicago Board Options Exchange (CBOE) (Count III); and (4) common law fraud, breach of fiduciary duty, negligence and negligent misrepresentation (Counts IV, V and VI).

Following a hearing on August 29, 1988, the Court ruled on initial motions and cross-motions, relating both to the arbitrability and the admissibility of Count II of the complaint. The pertinent text of that order follows:

1. The plaintiff's motion and application to bar and enjoin the pending arbitration [of all counts of the complaint] from proceeding and for an order determining that the parties are not obligated to arbitrate pursuant to a written provision in the account agreements between them is DENIED: and it is

2. FURTHER ORDERED, that defendants' cross-motion to compel arbitration is GRANTED as to all counts except Count Two which purports to assert claims under Section 12(2) of the Securities Act of 1933; and plaintiff (should he desire not to waive arbitrable claims not already asserted in the pending arbitration) shall make prompt application in those proceedings to amend and expand his claims, said application to be considered and ruled upon by the arbitrator; and it is

\*     \*     \*     \*     \*     \*

4. FURTHER ORDERED, that unless Count Two is withdrawn by the plaintiff prior thereto, the defendants shall cause to be filed on or before September 15, 1988 a motion returnable October 24, 1988 to strike or dismiss plaintiff's claim under Section 12(2) of the Securities Act of 1933 for failure to state

a claim upon such other basis as defendants may deem appropriate, and that on or before October 3, 1988, plaintiff shall file his memorandum in opposition to such motion and shall further cross move for an order determining that plaintiff's claim under Section 12(2) of the Securities Act of 1933 is not subject to the arbitration agreement between the parties, and defendants' memorandum in opposition to plaintiff's cross-motion shall be received on or before October 14, 1988; and it is

5. FURTHER ORDERED, that the within action be and the same hereby is stayed in all respects pending the Court's resolution and disposition of the motions aforestated in paragraph 4 of this Order.

Order of Sept. 6, 1988, pp. 2, 3.

Pursuant to the Court's order, defendants brought the present motion for dismissal of Count II or, in the alternative, for summary judgment. Plaintiff has moved for a determination of non-arbitrability of Count II. The Court's analysis will begin with defendants' motion to dismiss or for summary judgment. If that motion is granted, it will be unnecessary to rule on the question of non-arbitrability.

## DISCUSSION

### A. *Dismissal and Summary Judgment Motions*

Under Rule 8(a) of the Federal Rules of Civil Procedure, "a pleading which sets forth a claim for relief, ... shall contain ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief." Although motions to dismiss for failure to state a claim are generally viewed by the courts with disfavor, *Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir.1969), and it is the policy of the federal rules to determine actions on their merits, *Oil, Chemical & Atomic Workers International Union, AFL–CIO v. Delta Ref. Co.*, 277 F.2d 694, 698 (6th Cir.1960), when the allegations of the complaint are viewed in the light most favorable to the plaintiff, but still demonstrate no cognizable claim, dismissal is to be granted. *Richardson v.*

*Pennsylvania Department of Health*, 561 F.2d 489, 492 (3d Cir.1977). The Court would be willing to proceed to adjudicate defendants' motion to dismiss except that this matter has extended beyond the pleadings. It is now governed by Fed.R.Civ.P. 12(b) which states:

> If, on a motion asserting the defense numbered (6), to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56....

■ In this case an affidavit from John Bogucz, the individual defendant, has been received and contains statements that are germane to the Court's decision. Therefore, the motion by defendants on Count II will be treated as one for summary judgment.

■ Under Federal Rule of Civil Procedure 56(c), summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In deciding a motion for summary judgment, the facts must be viewed in the light most favorable to the nonmoving party and any reasonable doubt as to the existence of a genuine issue of fact is to be resolved against the moving party. *Continental Insurance Co. v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982) (citing *Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3d Cir.1981)). The moving party has the burden of establishing that there exists no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 321, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265 (1986). The Supreme Court recently stated that in applying the criteria for granting summary judgment,

> the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence present-

ed. The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict....

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

Here defendants must show that plaintiffs' claim under section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*, creates no genuine issue of material fact and that defendants are entitled to a judgment that, as a matter of law, they did not violate that section of the United States Code.

**B.** *The Elements of a Claim Under 15 U.S.C. § 77l*

Section 12(2) of the Securities Act of 1933 states in pertinent part:

> Any person who—
>
> 2) offers or sells a security, whether or not exempted by the provisions of section 3, ... by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such truth or omission shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

Clearly, this section of the statute indicates that the plaintiff must make out several elements to show a violation. However, under the facts of this case in particular, plaintiff must show that he was a purchaser and that the defendants were sellers of securities within the meaning of the Securities Act of 1933.

### 1. The Operation of Selling (Writing) an Option

Plaintiff attributes his alleged losses of approximately $1.5 million (Tr. Aug. 29, 1988 at p. 34) to securities transactions, allegedly completed for him by defendants, in options on the CBOE. Under the terms of the CBOE, the writer receives a premium and agrees to deliver the underlying security to the CBOE on call at a fixed price. The option exists only for a set period of time. The option price of the underlying security or index may be above or below the market price at the time the option is written. In certain options, the writer hopes the market price will not rise above the option price so the holder of the option will not exercise it. In other options, the reverse is true. Depending on the kind of option, the holder will exercise the option only when he can make an immediate profit either by selling back at a higher market price the stock he purchased at the lower option price or by selling at the higher option price the stock he bought at a lower price plus the premium. Depending on the kind of option, the writer gambles either that the market will go down or up over the life of the option. If the market goes in the direction of his gamble, he makes a profit (the premium the purchaser paid him for the option) and he does not have to purchase or sell the underlying security. *Gutter v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 1194, 1196 (6th Cir.1981), *cert. denied,* 455 U.S. 909, 102 S.Ct. 1256, 71 L.Ed.2d 447 (1982).

In this case, defendant Paine Webber and account executive John Bogucz allegedly structured plaintiff's account such that he wrote or sold options for a specified premium in exchange for obligating himself to purchase the security at a later agreed-upon date at an agreed-upon price if the options were executed. The underlying securities were stock indexes, and the transactions were governed by the rules of the Securities and Exchange Commission, NASD and CBOE. It is not required that a seller of options, in this case the plaintiff, actually own the securities on which he writes (sells) options.

Plaintiff alleges that rules of both the CBOE and the SEC were violated by defendants' dealings with him in securities transactions between April 1984 and October 1987.

### 2. A Seller of Options is Not a Purchaser

Plaintiff asserts that he is a purchaser and that defendant is a seller within the meaning of the Securities Act of 1933. (Plaintiff's Br. at 2). Plaintiff states that although his opening position in the complained-of transactions was as a seller of options and not as a purchaser, the core of the transaction was that he received income in exchange for obligating himself to purchase the underlying security at a future date at the "strike" or contract price. Thus, plaintiff's closing position in these transactions might require him to purchase the securities if the holders to whom he had originally sold the options exercised their options. Plaintiff adds that during the months of September and October 1987, his actual purchases of securities to meet his option commitments amounted to more than $1.4 million. (Plaintiff's Br. at 3). He maintains that these purchases make him a purchaser for the purposes of the Act, even though his initial position was as a seller. He adds that the securities acts have often been interpreted in an "expansive fashion" to further their objectives of providing investor protection. (*Id.*)

■ The Court acknowledges that the CBOE was probably not considered when Congress enacted the Securities Act of 1933. Nonetheless, the case law, though sparse, is clear. Under section 12(2), a seller of options, like plaintiff, is not a purchaser. In *Gutter v. Merrill Lynch,*

the court held that the plaintiff (a seller of option contracts like the plaintiff here), "was a seller" (not a purchaser). *Gutter v. Merrill Lynch,* 644 F.2d at 1196. The *Gutter* court added that "although the anti-fraud provisions of the 1934 Act protect both purchasers and sellers, the anti-fraud provisions of the 1933 Act protect only purchasers." (*Id.* at 1197). Since the plaintiff was not a purchaser, the Court of Appeals for the Sixth Circuit affirmed a directed verdict for the defendant on the 1933 Act claims. (*Id.*)

Similarly, in *Prudential–Bache Securities, Inc. v. Cullather,* 678 F.Supp. 601 (E.D.Va.1987), the court ruled that section 12(2) "does not apply to options contracts because an option writer is a seller, not a purchaser. Furthermore, purchasing securities in order to close an outstanding option position [as the plaintiff in that case did, and as Panek did in the present matter], does not convert an options seller into a 'purchaser.'" (*Id.* at 606–07). The court added that the core of the transactions was the selling aspect because the profit expectation held by the plaintiff was based on "the selling premium's margin over the cost of satisfying the obligation that the opening position established." (*Id.* at 607).

(Paragraphs 4–9 of Bogucz' affidavit describes the process by which all the transactions of which plaintiff complains were accomplished and describes briefly the writing or selling of options. This description is not controverted by plaintiff.)

### 3. Definition of a Seller Under the Securities Act of 1933

Plaintiff is unable to withstand defendants' motion for summary judgment for another reason. Under the Securities Act of 1933, a seller of securities has a narrowly tailored definition which plaintiff cannot meet. This Court will follow the reasoning of two cases: *Ralph v. Prudential–Bache Securities, Inc.,* 692 F.Supp. 1322 (S.D.Fl. 1988), and *SSH Co. Ltd. v. Shearson Lehman Brothers, Inc.,* 678 F.Supp. 1055 (S.D. N.Y.1987). In *Ralph,* the plaintiff based his section 12(2) claims on purchases of shares of common stock in certain corpora-

tions. In that sense, the facts diverge from the matter at hand. However, the *Ralph* court's definition of a "seller" under the 1933 statute is also valid under the circumstances here.

The *Ralph* court stated that section 12(2) of the Securities Act of 1933 "imposes liability on a person who offers or sells a security by means of a 'prospectus or oral communication.' The congressional purpose and intent underlying the Securities Act of 1933, 15 U.S.C. § 77a *et seq.,* is the regulation of the distribution of securities. In contrast, the primary concern of the Securities Exchange Act of 1934 is post-distribution trading of securities." (*Id.* at 1323).

The *Ralph* court granted the defendants' motion for summary judgment as to the count of the complaint that alleged a violation of section 12(2) because none of the occurrences of which the plaintiff complained in that case "transpired in the course of an initial distribution of securities." (*Id.*)

Similarly, in *SSH Co. Ltd.,* a section 12(2) claim was dismissed because that section of the Act imposes liability only on a person who offers or sells a security by means of a prospectus or oral communication. That court held that "the phrase 'prospectus or oral communication' refers to a prospectus, registration statement, or other communication related to a batch offering of securities, not to subsequent trading." (*SSH Co. Ltd.,* at 1059.).

In other words, the thrust of the 1933 Act is to protect the investor against misstatements and omissions made in the course of placing or issuing securities in the market place. It is not aimed at trades of listed securities in the market place after distributions have been completed. *See also Klein v. Computer Devices, Inc.,* 591 F.Supp. 270, 277–78 (S.D.N.Y.1984).

Therefore, even if plaintiff Panek here could establish that the Securities Act of 1933 governs his transactions by making him a purchaser of options, he cannot successfully allege that the defendants here come within the statute's definition of sell-

er. As a matter of law, this Court rules that section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*, does not govern the securities transactions in question and that Panek is not a proper plaintiff under that section. Panek is not a purchaser of securities and the defendants Bogucz and Paine Webber are not sellers of securities within the definition of the Act.

## CONCLUSION

For the foregoing reasons, the motion of defendants for summary judgment as to Count II of the complaint is granted. Therefore, the Court need not reach plaintiff's cross-motion for a determination that his claim under section 12(2) of the Securities Act of 1933 is not arbitrable.